## BROWN v. SPARTANBURG, UNION AND COLUMBIA R. R. CO.

PLEADINGS—NEGLIGENCE—NONSUIT.—An allegation of damages to plaintiff's property from negligence of defendant in keeping in repair a bridge across its track, is not sustained by proof of damages to the property by an engine on its tracks, and nonsuit was proper: MR. JUSTICE JONES *dissents.*

Before KLUGH, J., Spartanburg, July, 1898. Affirmed.

Action by M. M. Brown against Spartanburg, Union and Columbia R. R. Co. Plaintiff appeals from order of nonsuit.

*Messrs. Hydrick & Wilson,* for appellant, cite: 94 U. S., 474; 42 Md., 136; 39 S. C., 514; 31 S. C., 396.

*Messrs. Duncan & Sanders,* contra, cite: 21 S. C.; 470; 45

28—57

S. C., 282; 52 N. H., 552; 95 U. S., 130; 33 Md., 542; 6 Am. St. R., 521; 27 Am. St. R., 656; 2 Am. St. R., 606; 38 Am. St. R., 180; 30 Am. St. R., 902; 6 Am. St. R., 528; 46 Ib., 853; 55 Ib., 730; 53 Ib., 942; 52 S. C., 336.

April 17, 1900.   The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER. This was an action brought by the plaintiff against the defendant company to recover damages done to his wagon and team by the alleged negligence of the said railroad company.   The only negligence alleged in the complaint was in failing to keep in repair a bridge across a ditch on the side of the defendant's track, at a point where it intersected a "country road," to enable persons traveling said road to cross the track of said railroad company; for the complaint, after allegations of negligence in keeping said bridge in proper repair, proceeds as follows: "That on said day, at said point, while plaintiff's said team of mules and wagon, with its load, were traveling said road, the bridge, by reason of its said rotten and unsafe condition, fell and caused the said team to be held upon the track of the defendant, in which position, before they could be extricated, they were struck by a passing engine running upon said track," and the injuries complained of were sustained.   But the complaint fails to allege any negligence in running said engine, or any negligence on the part of the engineer in failing to stop his engine in time to avoid the collision with the team on the track.   The case came on for trial before his Honor, Judge Klugh, and at the close of the testimony in behalf of the plaintiff, counsel for defendant moved for a nonsuit upon the ground that "the defendant alleged in the complaint and the negligence proven is that the bridge fell in, and further proof that the negligence which they have alleged and shown according to their own witness, Mr. Rowland Quinn, did not cause any injury to the mules and wagon;" the Circuit Judge ruled as follows: "I think the testimony fails to show the infliction of any injury as the result of the

negligence alleged in the complaint, and the motion for a nonsuit will be allowed." A formal order was passed granting the motion, and judgment of nonsuit having been entered, the plaintiff appealed upon the following grounds: "That his Honor erred in holding that the testimony failed to show that the injury inflicted upon the plaintiff was the result of the negligence alleged in the complaint and in granting the nonsuit; inasmuch as the testimony established these facts, that the bridge maintained by defendant on each side and across its track fell because of its rotten and unsafe condition, carried plaintiff's wagon and team down with it, and held them upon defendant's track until they were struck and injured by defendant's engine, which facts were alleged in the complaint as constituting the negligence which was plaintiff's cause of action."

The testimony is set out in the "Case," and it not only fails to contain anything tending to show that any injury whatever was done to the wagon or mules by reason of the negligence alleged in the complaint; but on the contrary, the undisputed testimony of the plaintiff's own witness, Rowland Quinn, who was driving the team at the time the disaster occurred, was that no injury was done either to the wagon or the mules by the falling of the bridge, but the injury was inflicted by the passing engine, in which, as we have seen, no negligence was alleged. It seems to us that the ruling of the Circuit Judge is fully sustained by our own cases of *Glenn* v. *Railroad Company*, 21 S. C., 466, where the negligence alleged was in failing to furnish an engine running at night with a headlight, and the Court said that while there was quite sufficient evidence to show negligence in that respect, yet there being no evidence tending to show that the injury complained of resulted from such negligence, there was no error in granting the nonsuit. To the same effect, see *Fell* v. *Railroad Company*, 33 S. C., 198, and *Jenkins* v. *McCarthy*, 45 S. C., 278, where Mr. Justice Pope, in delivering the opinion of the Court, well said: "It would be hazardous to litigants when brought into Court to answer for

a specified negligence, to open wide the door to proof of *any kind* of negligence."

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE JONES *dissenting.* I am unable to concur. It seems to me that the case ought to have been submitted to the jury, whose province it is to determine what is the proximate cause of an injury. The trial Judge improperly assumed the province to decide that the collision with the train of cars was the proximate cause; whereas, the complaint and the evidence offered in support of it was on the theory that the negligence of defendant in maintaining a defective bridge at a regular crossing, into which plaintiff's team fell and was inextricably held until the train of defendant, operated with due care, collided as a natural and probable result of the negligence alleged. The point for the jury, not the Judge, to decide was, whether the negligence as to the bridge was an operating cause at the time of the collision. The jury should have been allowed to determine whether there was any intervening force or negligence between the negligence alleged and the collision which caused the injury, independently of the condition brought about by the negligence alleged, with instruction, if they so concluded, to find for defendant. For the Court to say that the mere fall of the team into the broken bridge of itself caused no immediate injury, and, therefore, to nonsuit was to ignore and take from the jury the consideration of the evidence that tended to show that by reason of the alleged negligence, plaintiff's team, though uninjured by the mere fall into the bridge, was nevertheless *held on the track, where defendant's train would naturally and probably cause the injury.* The famous squib case aptly illustrates here. The first thrower of a lighted squib into a crowded market place was the proximate cause of the injury, notwithstanding a number of other persons, in order to protect themselves, successfully tossed the squib until it finally fell on the plaintiff and injured

him. The agencies intervening between the first thrower and the final injury being the natural result to be expected under the circumstances, could not prevent the original act of negligence from being held the proximate efficient cause of the injury. The case before us is stronger, in that the injury was the result of concurrent agencies of defendant alone. In the case of *Harrison* v. *Berkely,* 1 Strob., 525, a shopkeeper who sold liquor to a slave contrary to law, which produced intoxication, which lead to exposure from which the slave died, was held responsible as the proximate cause of the slave's death. In the case of *Pickens* v. *Railroad,* 54 S. C., 498, it was alleged that by reason of defendant's failure to provide transportation according to contract, plaintiff was exposed to a storm and thereby injured. Upon the question whether the failure to provide transportation or the storm was the proximate cause of the injury, this Court said: "Leaving the depot was the natural consequence of defendant's failure to provide transportation for the plaintiff from Aiken to Edgefield; and in view of the frequency and suddenness with which storms arise in this country, it cannot be said that the injury from the storm was 'the intervention of any such extraordinary result as that the usual course of nature should seem to have been departed *from.*' *At least, this was a question to be determined by the jury* (italics ours). * * * More than one inference could have been drawn from the testimony, and when this is the case, it is always a matter for the consideration of the jury." Under the principle announced in these and like other cases, the jury should have been allowed to determine whether the negligence alleged had any proximate causal connection with the injury complained.

As it appears to me, the cases cited in the opinion of the majority do not apply to the facts of this case. For example, in the case of *Glenn* v. *R. R.,* 21 S. C., 470, the Court approves a nonsuit because there was a total failure of evidence tending to show that the negligence of a railroad company in failing to have a headlight to its engine was the

proximate cause of its injury, inasmuch as the uncontradicted evidence by plaintiff was that the plaintiff *saw* the approaching train several times before it came within one hundred yards of the point where he was struck. In such case, the absence of the headlight manifestly did not operate to produce the injury. This case is quite different. The evidence was such that the jury might conclude therefrom that the negligence of defendant held plaintiff's team on its track, and so was an operating cause in bringing about a collision to his injury.